IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| DATABASEUSA.COM, LLC )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>BLAKE VAN GILDER; INFOGROUP, )<br>INC., a Corporation; and KOLEY )<br>JESSEN, P.C. L.L.O. )<br>)<br>    Defendants. )<br>) | CASE NO 8:17-CV-386 |

### DEFENDANT, KOLEY JESSEN, P.C. L.L.O.'S
### BRIEF IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

This lawsuit is based entirely on a discovery dispute between the parties to *Infogroup, Inc. v. DatabaseUSA.com*, Case No. 8:14CV49 in the District of Nebraska ("the Underlying Litigation"), which is currently pending in this district. Plaintiff DatabaseUSA.com, LLC ("Database") argues that counsel for Defendant Infogroup, Inc. ("Infogroup"), Koley Jessen, P.C. L.L.O. ("Koley Jessen"), waited too long before turning over documents provided by whistleblower Blake Van Gilder – despite the fact that those documents were not responsive to any of Database's discovery requests.

The same issues raised in this case were already before Judge Zwart on Database's Motion for Sanctions in the Underlying Litigation. That motion was fully briefed, the evidentiary record made and closed, and Judge Zwart was prepared to rule. Before Judge Zwart ruled, however, Database abruptly changed course—filing this lawsuit in state court and later withdrawing its Motion for Sanctions in the Underlying Litigation.

The Complaint here alleges that by accepting a flash drive from Mr. Van Gilder and failing to immediately produce it to counsel for Database (even though it was not responsive to any discovery request served by Database), Koley Jessen committed conversion, violated the Nebraska Trade Secrets Act and engaged in aiding and abetting and civil conspiracy. Predictably, Database has failed to plead facts establishing the essential elements of any of these claims. Neither the Federal Rules of Civil Procedure nor Nebraska law recognizes a separate cause of action of an alleged discovery violation. This lawsuit is nothing more than a transparent attempt to disqualify Infogroup's counsel and minimize the impact of Mr. Van Gilder's damaging testimony against Database. That effort should be rejected and this case should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

*The Underlying Litigation*

Infogroup and Database are both database marketing companies in the business of amassing and maintaining information about businesses and consumers.[1] (ECF No. 227, Third Am. Compl., Case No. 8:14CV0049, ¶ 7.) Infogroup is an established company that has spent decades cultivating its reputation and its relationships with customers. (*Id.* ¶ 13.)

Vinod Gupta is a former shareholder and officer of Infogroup. Mr. Gupta left Infogroup – involuntarily – in 2008, and later formed Database. (*Id.* ¶¶ 22-23.)

---

[1] Because the documents filed in the Underlying Litigation are subject to judicial notice, the Court can consider them without converting this motion into one for summary judgment. *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").
Considering the documents filed in the Underlying Litigation is particularly appropriate in this case because the same issues Database has raised here were already before Judge Zwart on a fully developed record, and Judge Zwart was prepared to rule. (See ECF No. 277, Audio File, *Infogroup, Inc. v. DatabaseUSA.com, LLC*, No. 8:14CV0049, D. Neb. (statement by Judge Zwart)). Plaintiff's attempt to avoid that record by filing a new lawsuit should be rejected.

On February 2, 2014, Infogroup filed suit against Database, alleging that Database was misappropriating Infogroup's proprietary information, marketing that information as its own, and even holding itself out to the public as Infogroup. (ECF No. 227, Third Am. Compl. ¶ 7, Case No. 8:14CV0049, D. Neb.). Infogroup further alleges that Database targeted and recruited Infogroup employees, including Blake Van Gilder, and induced them to leave the company and misappropriate Infogroup's confidential information, source code, computer programs, customer information, and other trade secrets to be used by Database. (*Id.* ¶¶ 25, 51.)

*Database Attempts to Disqualify Koley Jessen*

On December 15, 2015, Koley Jessen noticed its appearance as counsel for Infogroup, whose former counsel then withdrew. (ECF No. 179, Notice of Appearance, Case No. 8:14CV0049, D. Neb.) On March 15, 2016, Database filed a Motion to Disqualify Koley Jessen, based on an alleged conflict of interest. (ECF No. 201, Def.'s Br. in Support of Mot. to Disqualify, Case No. 8:14CV0049, D. Neb.) Once the Motion to Disqualify was filed, Database's counsel refused substantive communications with Koley Jessen because it claimed the firm had a conflict of interest. (ECF No 265, Pls.' Brief in Opp. Mot. for Sanctions ¶ 30, Case No. 8:14CV00049, D. Neb.)

Koley Jessen filed a detailed response in opposition to the Motion to Disqualify, explaining why no conflict existed. (ECF No. 202, Pls. Brief in Opp. Mot to Disqualify, Case No. 8:14CV0049, D. Neb.) Judge Zwart agreed and denied the motion, explaining that the evidence "wholly discredit[ed] Gupta's averments" of a conflict of interest. (ECF No. 214, Mem. Op. & Order Denying Mot. to Disqualify at 4, Case No. 8:14CV0049, D. Neb.) Database filed Objections to the Order, seeking reconsideration from the District Court, and Judge Gerrard overruled the objections. (ECF No. 219, Mem. Op. & Order, Case No. 8:14-cv-49, D. Neb.)

*Whistleblower Blake Van Gilder Contacts Infogroup*

Also in March 2016, Mr. Van Gilder – a former employee of both Infogroup and Database – reached out to Amit Khanna of Infogroup via a LinkedIn communication. (Compl. ¶¶ 32-33; ECF No 265, Pls. Opp. Mot. for Sanctions ¶ 6, Case No. 8:14CV0049, D. Neb.) Mr. Khanna did not solicit contact with Mr. Van Gilder and did not respond to the LinkedIn communication. Instead, Mr. Khanna alerted Koley Jessen to the fact that Mr. Van Gilder had reached out to him. (Compl. ¶ 33; ECF No 266-3, Khanna Declaration, Case No. 8:14CV0049, D. Neb.) From that point on, Koley Jessen handled all the communications with Mr. Van Gilder.

On March 24, 2016, Greg Scaglione of Koley Jessen spoke with Van Gilder, by phone, for approximately twenty minutes. (ECF 266-1, Scaglione Aff. ¶ 5, Case No. 8:14CV0049, D. Neb.) Mr. Scaglione did not probe Mr. Van Gilder for any particular information but simply asked what information Mr. Van Gilder had that he wanted to share with Infogroup. (*Id.* ¶ 8.) During the call, Mr. Van Gilder confirmed many of the allegations against Database. (*Id.* ¶ 9.) He also said that he would check to see what documents he had and would send them to Mr. Scaglione. (*Id.* ¶ 11.) Mr. Scaglione did not request any particular documents from Mr. Van Gilder and did not even know what documents Mr. Van Gilder had in his possession. (*Id.*)

*Van Gilder Mails Flash Drive to Koley Jessen*

On April 15, 2016, Mr. Van Gilder mailed a flash drive to Koley Jessen. (*Id.* ¶¶ 12-13.) Koley Jessen reviewed the contents of the drive to determine whether it contained documents to substantiate what Mr. Van Gilder had told Mr. Scaglione. Koley Jessen did not provide a copy of the flash drive to Infogroup and only discussed the contents of the drive with Infogroup in general terms. (*Id.* ¶¶ 20, 23-27.) While the Complaint here notes that some of the documents were marked "Attorneys Eyes Only", this designation was placed on the documents by Koley Jessen when it produced them later, in response to Database's discovery requests. The

documents were not designated as confidential under the Protective Order when Koley Jessen received them from Mr. Van Gilder.

Koley Jessen did not produce the documents to Database when originally received by Koley Jessen because they were not responsive to any discovery requests served by Database. Moreover, Infogroup was not required to supplement its initial disclosures to include the new documents because it did not intend to rely on the documents to support its claims. *See* Fed. R. Civ. P. 26(a)(ii) (requiring a copy or description of only those documents that a party "may use to support its claims or defenses, unless the use would be solely for impeachment"). It should be noted that Database was already aware that Mr. Van Gilder was an individual with discoverable information, as both parties had listed him on their initial disclosures.

*Judicial Stay of the Underlying Litigation*

On May 10, 2016, shortly after Koley Jessen received the flash drive from Van Gilder, the Underlying Litigation was stayed by the Court. The stay remained in place until March 2, 2017. (ECF No. 225, Case No. 8:14CV00049, D. Neb.) During the period that the stay was in place, no discovery was undertaken by the parties.

*Koley Jessen Produces the Van Gilder Documents to Database*

Mr. Van Gilder was deposed on April 11, 2017, shortly after the judicial stay was lifted. Following that deposition, Database served discovery requests for the documents Mr. Van Gilder had provided to Koley Jessen. Koley Jessen promptly produced the documents, noting explicitly that they "were withheld from Infogroup and were maintained solely in possession of undersigned counsel." (ECF No 265, Pls. Brief Opp. Mot. for Sanctions ¶¶ 51-52, Case No. 8:14CV00049, D. Neb.)

5

*Database Files a Motion for Sanctions*

On August 1, 2017, Database filed a Motion for Sanctions in the Underlying Litigation, claiming that Infogroup and Koley Jessen had violated their discovery obligations by not disclosing the contents of the flash drive sooner. (ECF No. 256, Def.'s Mot. for Sanctions, Case No. 8:14CV00049, D. Neb.) Two days later, Database filed a brief in support of its motion. (ECF No. 259, Def.'s Br. in Support Mot. for Sanctions, Case No. 8:14CV00049, D. Neb.) Nearly two weeks later, on August 15, 2017, it filed an Evidence Index supporting its motion. (ECF. No. 263, Case No. 8:14CV00049, D. Neb.)

Koley Jessen filed a detailed brief in opposition to Database's motion, explaining why it had no obligation to disclose the documents until Database served a request for them. (ECF Nos. 265-266, Def.'s Brief in Opp. Mot. for Sanctions and accompanying exhibits, Case No. 8:14CV0049, D. Neb.) The response included an affidavit from Mr. Scaglione, explaining exactly how he received the Van Gilder documents. (ECF 266-1, Scaglione Aff., Case No. 8:14CV0049, D. Neb.) Database filed a Reply in Support of its Motion for Sanctions. (ECF 268, Defs.' Reply Br., Case No. 8:14CV0049, D. Neb.) Thus, the evidentiary record was made and closed.

Judge Zwart heard argument on the Motion for Sanctions, and was prepared to rule. (ECF No. 277, Audio File, Case No. 8:14cv00049, D. Neb). The issues presented here were already before Judge Zwart, fully briefed and argued, and Judge Zwart was prepared to rule on them. (*Id.* (statement by Judge Zwart stating that the issues are the same and acknowledging that she had been prepared to rule)). With a clear understanding of the likely resolution of the motion, Database filed this lawsuit and then withdrew the Motion for Sanctions.

Three days after the present lawsuit was filed, Judge Zwart held a telephonic hearing. (*Id.*) At that hearing, Judge Zwart acknowledged that she had been prepared to rule on the

Motion for Sanctions. She also stated that she had reviewed the Complaint in this case, and that the issues involved were the same ones that were before her:

> I have read the complaint that's now filed in state court in Douglas county. And it is almost entirely encompassed – it might *be* entirely encompassed – within the discovery disputes that are before me right now. So it would - - it would not probably be prudent for two courts to be deciding the same set of facts and the same circumstances at the same time. That leads to potentially inconsistent results and, at the very least, an inefficient use of judicial resources. That is why I am going to make sure that this audio is uploaded. Because the audio will be uploaded, it can be pulled down and it can be, if the case in Omaha is advanced, it can be handed to Judge Gleason immediately and he can make his decision as to whether he chooses to go forward or not. It's not for me to say what he ought to do with that information but ***I do want to be on the record as stating that I have read what is in front of him and it is the same as what is in front of me.***
>
> And I also want to say that I was prepared to rule and rule quickly so the parties could move forward when we all got together for the last conference. I chose not to after speaking with the attorneys because I did not believe that that was in the best interests of reconciling and resolving the case as efficiently as possible. There are good things that could come out of a settlement conference, perhaps some things that couldn't necessarily be awarded if it went to trial. And so I thought that that was the right thing to do. I'm wondering if I was correct on that. As of right now I'm wondering if that's the truth, which is why I needed to get you on the phone at this point.
>
> If this audio ever finds its way to Judge Gleason, he should also be aware that ***I was prepared to rule on all of it only two weeks ago***, maybe not even that long ago.

(*Id.* at 14:39-17:34 (emphasis added)).

## LEGAL STANDARDS

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. Willmar Pub. Sch. Indep. Sch. Dist. No. 437*, 591 F.3d 624, 629-30 (8th Cir. 2010)

7

(quoting *Twombly*, 550 U.S. at 555). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Public records are subject to judicial notice and may therefore be considered on a Rule 12(b)(6) motion to dismiss, without converting the motion into one for summary judgment. *See Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

Database's Complaint asserts three counts against Koley Jessen: conversion, violation of the Nebraska Trade Secrets Act, and "aiding & abetting & civil conspiracy." (Compl. at 10-14.) It does not, however, plead facts to establish the essential elements of any of those claims.

## DISCUSSION

### I. Database's conversion claim fails because it still has the information allegedly converted.

Database cannot state a claim for conversion because it was not deprived of the use of its property. Database claims that Mr. Van Gilder obtained information from its computer system that was confidential and proprietary. (Compl. ¶¶ 1, 26-27.) It has not claimed, however, that Mr. Van Gilder deleted the original files or prevented Database from accessing them.

"The essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property.'" *Malone v. Kantner,* No 4:12CV3190, 2015 WL 5156861 at *15 n.6 (D. Neb. Sept. 2, 2015) (Gerrard, J.) (internal quotation marks and citations omitted). "The law of conversion is concerned with possession, not title. Therefore *conversion of intangible property cannot occur where the plaintiff still has the information that the defendant allegedly appropriated.*" *Superior Edge. Inc. v. Monsanto*, 964 F.Supp.2d 1017, 1039 (D. Minn. 2013) (emphasis added); *see also ACI Worldwide Corp. v. MasterCard Technologies*, No. 8:14CV31, 2014 WL 7409750 at *9 (D. Neb. Dec. 31, 2014) (dismissing a claim for conversion

8

because the plaintiff "failed to allege that it was *deprived* of its property in any form") (emphasis in original).

For example, in *ACI Worldwide Corp. v. MasterCard Technologies*, the plaintiff alleged that the defendant had wrongfully disclosed its confidential information and intellectual property in violation of several agreements. No. 8:14CV31, 2014 WL 7409750 at *9 (D. Neb. Dec. 31, 2014). This Court dismissed the plaintiff's claim for conversion because the complaint did not allege that the plaintiff was deprived of its property in any form. This Court explained: "ACI has not alleged that it was deprived of the use of its IP in any form nor has ACI alleged that Defendants had access to some form of ACI's IP that ACI did not simultaneously have access to. . . . ACI has not demonstrated that it no longer has access to its intangible property in some form because of Defendants' alleged wrongdoing." *Id.* ACI therefore could not state a conversion claim.

Similarly, in this case, Database alleges that at the time his employment was terminated, Mr. Van Gilder obtained 1,000 pages of electronic documents from Database computers that included proprietary information and trade secrets. (Compl. ¶¶ 1, 26-27.) The Complaint alleges that Mr. Van Gilder wrongfully acquired those documents. It does not, however, allege that Mr. Van Gilder deleted the original files from Database's computer system or that it no longer has access to them. Because Database has not pled facts to show that it lost access to the allegedly converted documents, it has not stated a claim for conversion. *See ACI Worldwide Corp.*, 2014 WL 7409750 at *9; *see also Superior Edge. Inc.* 964 F.Supp.2d at 1039 ("conversion of intangible property cannot occur where the plaintiff still has the information that the defendant allegedly appropriated").

9

## II. Database has not stated a claim for violation of the Nebraska Trade Secrets Act.

Database's claim for violation of the Nebraska Trade Secrets Act fails because it has not alleged that Koley Jessen was involved in the alleged misappropriation by Mr. Van Gilder, or even that Koley Jessen had any way of knowing what was on the flash drive at the time it received it.

The Nebraska Trade Secrets Act defines misappropriation as follows:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

   (i) Used improper means to acquire knowledge of the trade secret:

   (ii) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

      (A) Derived from or through a person who had utilized improper means to acquire it;
      (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
      (C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

   (iii) Before a material change of his or her position, knew or had reason to know that the information was a trade secret and that knowledge of it had been acquired by accident or mistake.

Neb Rev. Stat. § 87-502(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. Willmar Pub. Sch.*

10

*Indep. Sch. Dist. No. 437*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Here, the Complaint alleges that Koley Jessen "aided and assisted in the misappropriation of trade secrets" by retaining the flash drive for fourteen months before disclosing it in discovery. (Compl. ¶ 47.) The Complaint acknowledges that Koley Jessen disclosed the Van Gilder documents "when compelled to do so by the requirements of the Federal Rules of Civil Procedure," but argues that its failure to do so sooner somehow "extended the misappropriation." (Compl. ¶ 47.) The Complaint pleads no fact, however, to suggest that Koley Jessen was involved in acquiring the documents from Database. Database has not pled that Koley Jessen directed Mr. Van Gilder to acquire the documents, knew that Mr. Van Gilder was acquiring the documents, or had anything whatsoever to do with their acquisition. Nor does it allege that when Koley Jessen received the flash drive from Mr. Van Gilder, it knew what information was contained on the drive. (Compl. ¶¶ 47-52.) The Complaint also pleads no *facts* to suggest that Koley Jessen had reason to believe the documents Mr. Van Gilder provided were acquired improperly. *See* Neb. Rev. St. 87-502(2) (defining misappropriation).

Instead, the Complaint contains only a summary recitation of misappropriation: "Defendants, Infogroup and Koley Jessen, misappropriated the trade secrets by acquiring them from Van Gilder, when they knew or had reason to know that the trade secrets were acquired by improper means. . . ." (Compl. ¶ 49.) This formulaic recitation of the elements of misappropriation is not enough to state a viable claim. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks omitted).

11

Even taking all facts pled in the Complaint as true, Database has not stated a claim against Koley Jessen for violation of the Nebraska Trade Secrets Act.

### III. Database has not stated a claim for aiding and abetting or civil conspiracy.

Database's claim for "Aiding & Abetting and Civil Conspiracy" also fails for similar reasons. Once again, the Complaint alleges no facts to suggest that Koley Jessen had any involvement in acquiring the documents from Database. (Compl. ¶¶ 26, 33, 53-55.)

"A claim of civil conspiracy requires the plaintiff to establish that the defendants *had an expressed or implied agreement* to commit an unlawful or oppressive act that constitutes a tort against the plaintiff." *Salem Grain Co., Inc. v. Consol. Grain & Barge Co.*, 297 Neb. 682, 701-02, 900 N.W.2d 909, 923-24 (2017) (emphasis added). Civil conspiracy "is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort." *Id*. "Similarly, a claim of aiding and abetting is that in addition to persons who actually participate in concerted wrongful action, persons who aid, abet, or procure the commission thereof, are subject to a civil action therefor." *Id*. at 924 (internal quotation marks omitted).

Here, Database's claim for civil conspiracy fails because it has not alleged any facts to suggest that there was agreement between Van Gilder and Koley Jessen to wrongfully obtain the documents from Database. In fact, the Complaint pleads very few facts relating to Koley Jessen at all. Database complains that Koley Jessen retained the documents from Mr. Van Gilder for fourteen months before disclosing them, and asserts – summarily – that this amounted to "an agreement" to "advance [Van Gilder's] purposes," but it alleges no facts to suggest such an agreement existed. *See* Compl. ¶54; *Twombly*, 550 U.S. at 555 ("'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do'"). Instead, the Complaint specifically alleges that *Van Gilder* took the documents from Database when his employment

12

was terminated. (Compl. ¶¶ 1, 25-27, 32.) Mr. Van Gilder *later* reached out Infogroup, who referred him to Koley Jessen. (*Id.* ¶ 33.) But there is no indication whatsoever that Koley Jessen was involved in wrongfully acquiring the documents from Database, to the extent they were wrongfully acquired. (*Id.*) Koley Jessen certainly did not enter into an agreement to misappropriate them.  Nor has Database alleged any facts to suggest that Koley Jessen aided, abetted, or procured the taking of Database's documents.

Because the Complaint does not plead facts to show that there was an agreement to commit an unlawful act constituting a tort, the civil conspiracy claim should be dismissed. Database's claim for aiding and abetting similarly fails because no facts are alleged to suggest that Koley Jessen aided, abetted, or procured the taking of Database's documents.

## Conclusion

Even taking all facts pled in the Complaint as true, Database has failed to state a claim against Koley Jessen upon which relief may be granted.  The Complaint should therefore be dismissed with prejudice.

Dated this 15th day of December 2017.

    Respectfully submitted,

/s/*Maryl C. Sattler*
William F. Hargens (#16578)
Maryl C. Sattler (#25869)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone:  (402) 341-3070
Fax:  (402) 341-0216

*Counsel for Koley Jessen, P.C. L.L.O.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of December, 2017, I electronically filed the foregoing with the Clerk of the U.S. District Court using the CM/ECF system which will send notice such filing to all CM/ECF participants.

/s/*Maryl C. Sattler*
Maryl C. Sattler