IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DATABASEUSA.COM, LLC, | |
| Plaintiff, | 8:17-CV-386 |
| vs. | |
| INFOGROUP, INC. et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This lawsuit originated as a motion for sanctions in a separate case, *Infogroup, Inc. v. DatabaseUSA.com*, case no. 8:14-CV-49 ("*Infogroup I*"). That case is still pending, but before the Magistrate Judge could rule on the motion for sanctions, the plaintiff withdrew it and filed this case instead. Filing 1-1. The defendants—Infogroup, Inc.; Koley Jessen P.C.; and Blake Van Gilder—now move to dismiss Database's complaint under Fed. R. Civ. P. 12(b)(6). Filing 15; filing 17; filing 34. Those motions will be granted in part, and denied in part, as set forth below, and defendants Koley Jessen and Infogroup will be dismissed as parties.

BACKGROUND

The plaintiff in this case, DatabaseUSA, is the defendant in *Infogroup I*. There, Infogroup is suing Database for, among other claims, trademark infringement and false advertising. See *Infogroup I,* filing 227.

In December 2017, Database filed a motion for sanctions against Infogroup in *Infogroup I* (filing 256). The motion was premised on allegations that a former Database employee, Blake Van Gilder, had copied proprietary information to a flash drive and mailed it to Infogroup's counsel at Koley Jessen, P.C. *Infogroup I,* filing 256 at 1. Koley Jessen allegedly shared the

information with Infogroup, and then "conceal[ed]" its receipt of the documents for over a year. *Infogroup I*, filing 256 at 1-2. That conduct, Database argued, was in violation of a previously-entered protective order which required the parties to "promptly notify" each other of any "unauthorized copying or disclosure of Protected Material." *Infogroup I*, filing 29 at 12.

But Database withdrew its motion for sanctions before the Magistrate Judge issued a ruling. *See Infogroup I*, filing 279. Two weeks later, Database filed this case, alleging the same conduct described above—*i.e.*, that Van Gilder made "unauthorized disclosures" to Infogroup and Koley Jessen. *See* filing 1-1. Database has sued the defendants for tortious conversion; violations of the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501 *et seq*. and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; and aiding and abetting a conspiracy. *See* filing 1-1 at 10-14. The defendants have filed separate motions to dismiss under Rule 12(b)(6). Filing 15; filing 17; filing 34.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*.

DISCUSSION

As a preliminary matter, it is undisputed that Van Gilder mailed Koley Jessen a flash drive containing documents from Database's server. *See* filing 1-1 at 1; filing 16 at 4. But Koley Jessen denies ever sharing those documents with Infogroup, or "concealing" them in the manner that Database suggests. Filing 16 at 5. And each defendant argues that, in any event, the actions alleged do not give rise to a viable claim for relief.

### (a) Conversion

Database has sued the defendants for tortious conversion, claiming that they took or received proprietary information with the "intent to permanently deprive Database[] of its property." Filing 1-1 at 9-12.

Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights. *Baye v. Airlite Plastics Co.*, 618 N.W.2d 145, 152 (Neb. 2000). The essence of conversion is not the acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property—in other words, the *effect* on the rightful owner. *Zimmerman v. FirsTier Bank*, 585 N.W.2d 445, 452 (Neb. 1998). The plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion. *Baye*, 618 N.W.2d at 152.

Here, Database claims that Van Gilder converted its proprietary information by copying it to a flash drive and sharing it with Koley Jessen and Infogroup. Filing 1-1 at 9-10. Those entities, in turn, "exten[ded]" the conversion by retaining the documents without Infogroup's knowledge or consent. Filing 1-1 at 11-12. As a result of that conduct, Database alleges over $150,000 in damages relating to "expenses incurred to protect [its] information from improper disclosure[.]" Filing 1-1 at 9.

But those allegations, which the Court accepts as true, do not support a claim for tortious conversion. As noted above, the essence of conversion is the wrongful deprivation of property from the rightful owner. *Zimmerman*, 585 N.W.2d at 452. And here, there is no indication that the defendants deprived Database of its proprietary information by, for example, deleting or destroying files. Stated another way, conversion of intangible property cannot occur where the plaintiff "still has the information that the defendant[s] allegedly appropriated." *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1039 (D. Minn. 2013); *see Zimmerman*, 585 N.W.2d at 452; *Malone v. Kantner*, 2015 WL 5156861 at *15 n. 6 (D. Neb. Sept. 2, 2015); *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11-CV-438, 2015 WL 13484484, at *12 (D. Neb. Feb. 4, 2015); *ACI Worldwide Corp. v. MasterCard Techs., LLC*, 2014 WL 7409750, at *8–9 (D. Neb. Dec. 31, 2014). And in this case, Database does not allege that it was deprived access to the files at issue. Accordingly, Database's tortious conversion claims against Infogroup, Koley Jessen, and Van Gilder (filing 1-1 at 9-12) will be dismissed.

### (b) <u>Nebraska Trade Secrets Act (NTSA)</u>

Database claims that the defendants misappropriated trade secrets by sending, receiving, and/or "withholding" highly sensitive documents. Filing 1-1 at 1, 12-13. To prevail on that claim, Database must prove, among other things, the existence of a trade secret and the defendants' misappropriation of it. Neb. Rev. Stat. §§ 87-502 to 504; *Richdale Development Co. v. McNeil Co., Inc.*, 508 N.W.2d 853, 859 (Neb. 1993).

### *(i) Infogroup and Koley Jessen*

Infogroup and Koley Jessen move to dismiss Database's claim, arguing that it has failed to allege a "misappropriation" as that term is defined under

the NTSA. *See* filing 16 at 10; filing 18 at 6-7. To that end, the entities note the absence of any allegation regarding their knowledge of, or participation in, Van Gilder's alleged conduct. In other words, Infogroup and Koley Jessen argue that, at the time the flash drive arrived in the mail, they had "[no] way of knowing what was on [it.]" Filing 16 at 10. And because they were unaware of Van Gilder's actions, and the contents of the flash drive more generally, they could not have "misappropriated" the information as Database alleges.

"Misappropriation" is defined under Nebraska law as the "[a]cquisition of a trade secret of another by a person who *knows or has reason to know* that the trade secret was acquired by improper means." Neb. Rev. Stat. § 87-502(2) (emphasis added). "Improper means" are "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" § 87-502(1).

Here, Database has clearly alleged that Van Gilder, in copying documents to a flash drive, acquired its trade secrets by improper means. *See* filing 1-1 at 1. It has also alleged that Van Gilder, after obtaining the documents, shared them with Infogroup and Koley Jessen. *See* filing 1-1 at 10. But the complaint contains no *factual* allegations from which the Court can reasonably infer that either Infogroup or Koley Jessen knew—or had reason to know—that the alleged trade secrets were acquired improperly. Database does not allege, for example, that Infogroup or Koley Jessen encouraged or directed Van Gilder to copy the documents. Rather, Database claims that Koley Jessen received the flash drive in the mail, reviewed it, shared it with Infogroup, and then "with[held]" it from Database in *Infogroup I* for over 14 months. *See* filing 1-1 at 12. But that conduct, even accepting it as true, does not give rise to a "misappropriation" under the NTSA. *See* Neb.

Rev. Stat. § 87-502(2). Accordingly, Database's claim against Koley Jessen and Infogroup will be dismissed.

### *(ii) Van Gilder*

Van Gilder moves to dismiss on similar grounds, arguing that Database's claim is "merely a formulaic recitation of [the] elements of . . . misappropriation." Filing 35 at 5. He also argues that the information, even assuming it was wrongfully obtained, does not amount to a "trade secret" as that term is defined under the NTSA. Filing 35 at 8.

The Court disagrees with Van Gilder on both arguments, and will therefore deny his motion to dismiss. On the first point, the Court finds enough at this stage of the litigation to support a "misappropriation" under the NTSA. Indeed, Database claims that Van Gilder, while employed at Database, was entrusted with the "protection of trade secrets and confidential information." Filing 1-1 at 5. Before he was terminated from his position, Van Gilder—"exceeding authorized access"—copied information onto a flash drive to "advantage" himself and "harm" Database. Filing 1-1 at 10. That alleged conduct, coupled with the allegations discussed above, is enough at this stage for Database to proceed on its claim.

Similarly, Database has sufficiently alleged the existence of a "trade secret," which the NTSA defines as information that

(a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4). That definition is narrow, meaning that if an alleged trade secret is ascertainable at all by any means that are not improper, the would-be secret is excluded from coverage under the Act. *First Express Servs. Grp., Inc. v. Easter*, 840 N.W.2d 465, 474 (Neb. 2013).

Van Gilder's argument on this point appears to conflate the term "economic value" as it is used in the definition above, with economic damages more generally. To that end, Van Gilder argues that Database has failed to allege the existence of a trade secret because there is no indication that any defendant "obtained economic value from the documents[.]" Filing 35 at 8. But such a showing is not required under the statutory definition as set forth above. Rather, the information *itself* must derive economic value from not being "known" or "ascertainable" to others. § 87-502(4). And here, Database has described in detail the "highly confidential" and "proprietary" nature of the files at issue, and the tactics it allegedly employs to keep that information "protected." *See* filing 1-1 at 4-5, 8-10. Database has alleged enough with respect to "trade secrets" to proceed on its claim.

As a final matter, to the extent that Van Gilder's argument is premised on economic damages more generally (*i.e.*, that Database has failed to plead damages resulting from the alleged misappropriation), that motion will be denied. Indeed, while conclusory, Database claims that the defendants used the allegedly misappropriated data, resulting in damage to its "competitiveness and reputation[.]" Filing 1-1 at 9. Those allegations, when viewed in connection with the entire complaint, are enough at this early stage to overcome Van Gilder's motion. Accordingly, Van Gilder's motion to dismiss on those grounds will be denied.

### (c) Aiding and Abetting & Civil Conspiracy

Database has sued Infogroup and Koley Jessen for aiding and abetting and civil conspiracy. Filing 1-1 at 13-14. Both entities move to dismiss that claim as a matter of law. Filing 16 at 12; filing 18 at 9.

A "civil conspiracy" is defined as "a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." *United Gen. Title Ins. Co. v. Malone*, 858 N.W.2d 196, 215 (Neb. 2015). A "conspiracy" is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. *Id.* Without such an underlying tort, there can be no claim for *either* civil conspiracy *or* aiding and abetting the commission of the tort. *Id.* And here, the Court has already found that Database's claims against Infogroup and Koley Jessen must be dismissed—leaving only Van Gilder, and no one who could have conspired with him.

Further, a claim of civil conspiracy requires the plaintiff to establish that the defendants had an express or implied agreement to commit an unlawful or oppressive act that constitutes a tort against the plaintiff. *Salem Grain Co., Inc. v. Consol. Grain & Barge Co.*, 900 N.W.2d 909, 923-24 (Neb. 2017). But as discussed above, Database has provided no factual allegations to support such an inference. Accordingly, its civil conspiracy and aiding and abetting claim will be dismissed.

### (d) Computer Fraud and Abuse Act (CFAA)

Database has sued Van Gilder under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, which provides civil remedies in limited circumstances for individuals or entities damaged by computer fraud. Van Gilder moves to dismiss that claim, arguing that Database has failed to allege a "loss" as that term is defined under the CFAA. Filing 35 at 8.

The CFAA provides a private right of action to "any person who suffers damage or *loss* by reason of a violation of this section . . . [so long as] the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." § 1030(g) (emphasis added). Relevant here, subclause (I) includes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value[.]" § 1030(c)(4)(A)(i)(I). So, as a general matter, a claim for relief may lie where the plaintiff suffers a "damage or loss" during any 1-year period of at least $5,000.

According to Van Gilder, Database has not alleged a "loss" as that term is defined under the CFAA. Filing 35 at 8-9. To support that argument, Van Gilder relies on cases that have interpreted the term narrowly, as applying only to costs associated with service interruptions resulting from the wrongdoer's actions. *See* filing 35 at 8-9. And here, Van Gilder argues, because Database has failed to allege "an interruption of services," its claim necessarily fails as a matter of law. Filing 35 at 8.

The CFAA defines "loss" as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]

§ 1030(e)(11). In applying that definition, at least three federal appellate courts have rejected the argument that Van Gilder presses here—that "loss" necessarily requires an interruption in service. *See Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); *Yoder & Frey Auctioneers,*

*Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1073-74 (6th Cir. 2014); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009). Indeed, as the Sixth Circuit Court of Appeals observed:

> 'Loss' is defined in the disjunctive—it includes 'any reasonable cost to any victim including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense.' It also encompasses 'any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.' If a plaintiff is able to establish a loss of at least $5,000 in value, whether that be composed solely of costs identified in the first clause, or solely costs identified in the second clause, or a combination of both, then he may recover under the statute.

*Yoder & Frey Auctioneers*, 774 F.3d at 1073-74 (citations omitted).

Against that backdrop, the Court rejects Van Gilder's argument that, in the absence of a service interruption, Database cannot maintain a claim under the CFAA. To the contrary, Database need only allege the expenditure of "reasonable costs" exceeding $5,000 in response to Van Gilder's alleged offense. *See id.*; *Brown Jordan Int'l*, 846 F.3d at 1174-75. And Van Gilder does not argue that Database's alleged expenditures fail to meet that threshold requirement.[1] Accordingly, Van Gilder's motion to dismiss Database's CFAA claim will be denied.

---

[1] Neither party has addressed whether the type of post-intrusion costs allegedly incurred by Database (*i.e.*, the implementation of new safety-related protocols) are recoverable under

(e) Leave to Replead

As a final matter, Database requests leave to amend its complaint in the event that any claim is dismissed under Rule 12(b)(6). *See* filing 22 at 7. But that request does not comply with the local rules, which require the moving party to "file as an attachment to [a] motion an unsigned copy of the proposed amended pleading." NECivR 15.1(a); *see U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012). Thus, in light of the Court's ruling and because Database has not yet filed a motion or, obviously, attached a proposed amended pleading, its request to amend its complaint is denied at this point.

CONCLUSION

Therefore, the Court will grant Infogroup's and Koley Jessen's motions to dismiss (filing 15; filing 17) in their entirety, and both entities will be dismissed as parties. Further, the Court will grant Van Gilder's motion to dismiss (filing 34) Database's claim for tortious conversion, and deny it with respect to Database's remaining claims under the Nebraska Trade Secrets Act and the Computer Fraud and Abuse Act.

IT IS ORDERED:

1. Koley Jessen P.C., LLO's motion to dismiss (filing 15) is granted. Koley Jessen P.C., LLO is dismissed as a party.

2. Infogroup Inc.'s motion to dismiss (filing 17) is granted. Infogroup Inc. is dismissed as a party.

---

the CFAA's definition of "loss." *See United States v. Stratman*, No. 4:13-CR-3075, 2014 WL 3109805, at *4 (D. Neb. July 8, 2014). So, the Court does not address that issue here.

3. Blake Van Gilder's motion to dismiss (filing 34) is granted in part, and denied in part. Specifically,

   a. Van Gilder's motion to dismiss Database's claim for tortious conversion is granted.

   b. Van Gilder's motion to dismiss Database's claim under the Nebraska Trade Secrets Act is denied.

   c. Van Gilder's motion to dismiss Database's claim under the Computer Fraud and Abuse Act is denied.

4. This matter is referred to the Magistrate Judge for case progression.

Dated this 26th day of March, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge