IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DATABASEUSA.COM, LLC, | |
| Plaintiff, | 8:17CV386 |
| vs. | |
| BLAKE VAN GILDER, INFOGROUP, INC., a Corporation; and KOLEY JESSEN P.C., LLO, | ORDER |
| Defendants. | |

This matter is before the Court on Plaintiff DatabaseUSA's ("Database") Motion to Compel Discovery (Filing No. 159) and Motion to Compel Deposition and Documents (Filing No. 163). For the reasons explained below, the Motion to Compel Discovery (Filing No. 159) is denied and the Motion to Compel Deposition and Documents (Filing No. 163) is granted, in part.

**BACKGROUND**

Database filed the instant suit against its former employee, Blake Van Gilder ("Van Gilder"), as well as Koley Jessen law firm and Infogroup on September 11, 2017. The Complaint alleged that Van Gilder misappropriated sensitive internal documents owned by Database and gave the documents to Koley Jessen and Infogroup. (Filing No. 1.) The documents at issue were found on a flash drive Van Gilder provided to Koley Jessen in connection with other litigation ("Underlying Litigation") between Database and Infogroup. Gregory Scaglione ("Scaglione"), who is a shareholder with Koley Jessen and who represented Infogroup in the Underlying Litigation, submitted a declaration (the "Declaration") (Filing No. 125-7) to the Court in the

Underlying Litigation explaining how he received the flash drive and what happened once he received the flash drive.

On or about April 10, 2019, counsel contacted the Court in this case regarding a discovery dispute involving the scope of discovery as it pertained to the flash drive. Following a telephone conference with the Court on April 25, 2019, the Court ordered that discovery in this case be limited to information regarding the flash drive, to include (1) the content of the flash drive; (2) what content from the flash drive was disclosed; (3) who the content was disclosed to; (4) and what those individuals did with the disclosed information. (Filing No. 110.)

On July 19, 2019, Database filed a motion to compel (Filing No. 120) seeking an order requiring Koley Jessen and Infogroup to produce certain documents withheld on the basis of privilege and to provide deposition testimony regarding the flash drive. Database argued that by citing and relying upon the Declaration, Infogroup waived any applicable privilege over its communications with Koley Jessen concerning the flash drive. The Court concluded that Infogroup's submission of the Declaration to the Court waived privilege and ordered Infogroup and Koley Jessen to provide deposition testimony regarding the content of the Declaration. (Filing No. 134.) However, the Court found the scope of waiver was limited to the conversations between Koley Jessen and Infogroup identified in the Declaration. The Court found the waiver did not extend to all privileged communications and documents related to the flash drive. By separate order, the Court reiterated that the waiver extended only to the specific communications between Koley Jessen and Infogroup described in the Declaration. The Court stated the waiver did not extend to emails or other documents appearing on privilege logs that relate to the communications described in the Declaration. (Filing No. 138.)

Database deposed Scaglione on February 21, 2020 regarding the contents of his Declaration. During the deposition, Scaglione explained that a conversation described in his Declaration was a phone call between Koley Jessen attorney, Elizabeth Luebbert ("Luebbert") (formerly Elizabeth Hoffman), and Infogroup employee, Amit Khanna ("Khanna"). (Filing No. 162-3.) Scaglione testified that he directed Luebbert to speak to Khanna regarding information contained on the flash drive. Scaglione did not participate in the call between Luebbert and Khanna, but Luebbert reported back to Scaglione following the call and took notes of her conversation with Khanna.

On June 1, 2020, all parties except Van Gilder participated in a telephone conference with the Court regarding the sufficiency of responses to certain of Database's interrogatories and requests for production. (Filing No. 153.) Generally speaking, the discovery requests sought information regarding the identity of *all* Infogroup customers, as well as revenue and sales data for these customers. (Filing No. 146-1.) After hearing the matter, the Court concluded that discovery regarding all Infogroup customers was overly broad. Counsel for Database suggested it could edit its discovery requests so they specifically applied only to eleven entities that were both referenced on materials contained on the flash drive and identified as accounts Database lost between 2017 and 2019—after the transmission of the flash drive from Van Gilder to Koley Jessen. The Court granted Database leave to revise its discovery requests as discussed and as limited by the Court's April 25, 2019 order. (Filing No. 153.) Still, the Court noted its concern that limiting the entities may not resolve the overbreadth issue. The Court indicated that the relevance of this discovery was based upon Database losing clients due to the information contained on the flash drive. (Filing No. 158.) The Court stated: "If, based on the question, Infogroup's answer is that -- that these people were clients before they got the flash drive, they can state that as their answer and then question -- object based on relevance because I do think that that's an issue." (Filing No. 158.)

During the telephone conference on June 1, 2020, Database also expressed its desire to depose Luebbert. The Court denied Database's request. In doing so, however, the Court stated: "I think the most appropriate thing to do in this particular case is that Mr. Khanna's deposition needs to be taken. We need to see what Mr. Khanna has to say. But I will tell you, we may be back to having Ms. Luebbert's deposition taken depending on what Mr. Khanna says." (Filing No. 158.)

Database thereafter served revised discovery requests. The requests sought information and documents pertaining to the eleven entities discussed during the telephone conference. The interrogatories (Filing No. 162-4) were as follows:

> **Interrogatory No. 12**: Identify whether the following entities are (1) Infogroup customers; and (if so) (2) the date they first became Infogroup customers:
>
> Microsoft Corporation
> Esri (Environmental Systems Research Institute)
> Epsilon Data Management LLC
> Telenav, Inc.

3

>Apple Inc.
>NetProspex Inc.
>Rauxa LLC
>Salesify, Inc.
>TMA Direct Inc.
>Bizo Inc.
>Act-On Software
>
>**Interrogatory No. 13**: For each of the eleven (11) entities identified in [Revised] Interrogatory No. 12, provide the monthly revenue received on an entity-by-entity basis for the period January 1, 2016 to the present.
>
>**Interrogatory No. 14**: For each of the eleven (11) entities identified in [Revised] Interrogatory No. 12, identify any and all costs associated with the sale or recognized revenue set forth in your response to [Revised] Interrogatory No. 13.
>
>**Interrogatory No. 17:** Identify and describe all communications with Koley Jessen, PC, LLO regarding documents or information on the Van Gilder Flash Drive, including the date(s) of all such communications; the individuals involved in the communication(s); and the identities of any Infogroup individuals involved in the communication(s).
>
>**Interrogatory No. 18**: For all communications identified in response to Interrogatory No. 17, describe Infogroup's actions once in receipt of the documents or information, including whether Infogroup notified anyone that it had the information; whom it relayed or described any portion of the information to; and the date of any such communication(s).

Database's requests for production (Filing No. 162-6) provided:

>**Request for Production No. 43**: All contracts or agreements with the eleven (11) entities identified in [Revised] Interrogatory No. 12, executed since January 1, 2016.
>
>**Request for Production No. 44**: For each of the eleven (11) entities identified in [Revised] Interrogatory No. 12, the most recent contract or agreement dated before March 2, 2016.
>
>**Request for Production No. 45:** For each of the eleven (11) entities identified in [Revised] Interrogatory No. 12, all contracts or agreements dated between January 1, 2016 and March 2, 2016.
>
>**Request for Production No. 46**: Any and all materials reflecting pricing, pricing strategies, or changes to pricing created or updated on or after March 2, 2016, as well as the most recent materials reflecting pricing, pricing strategies, or changes to pricing dated before March 2, 2016.

> **Request for Production No. 47**: Any and all materials reflecting sales strategies created or updated on or after March 2, 2016 as well as the most recent materials reflecting sales strategies dated before March 2, 2016.
>
> **Request for Production No. 49**: All bids and/or proposals presented to any of the eleven (11) entities identified in [Revised] Interrogatory No. 12 between March 1, 2016 and September 1, 2016.

(Filing No. 162-6.)

Infogroup responded to Database's revised discovery requests on July 24, 2020. Infogroup did not produce any documents in response to the requests for production and responded to interrogatory No. 12, which sought information regarding the eleven entities discussed during the conference on June 1, 2020, as follows:

> Infogroup states that Microsoft Corporation, ESRI, Rauxa LLC, Epsilon and Telenav were customers of Infogroup before and after March 2, 2016. With regard to Apple, NetProspex, Salesify, TMA Direct, Bizo and Act-On, all were customers of Infogroup before March 2, 2016, but none were ongoing customers of Infogroup on March 2, 2016, and none have resumed a customer relationship with Infogroup on or after March 2, 2016 to the present time. As such, Infogroup objects to providing further response to this Interrogatory on the basis that the information it seeks is irrelevant and immaterial to any facts at issue, and therefore beyond the scope of discovery. Infogroup further objects to this Interrogatory on the basis that as written, it is overly broad and burdensome. Infogroup further objects to this Interrogatory to the extent it seeks information that is confidential, internal, business trade secret information. Finally, Infogroup objects to this Interrogatory on the basis that it exceeds the scope of allowed discovery, as set forth within the Order of the Court of April 25, 2019 (ECF No. 110) and hearing on June 1, 2020.

(Filing No. 162-4.) Infogroup similarly objected to revised interrogatories Nos. 13 and 14, which sought additional information about the eleven entities. Infogroup responded to revised interrogatories Nos. 17 and 18 by objecting based on the attorney-client privilege and/or work product doctrine, and by referring to the declarations from Scaglione, Laura De Santos, and Amit Khanna which were filed in the Underlying Litigation. (Filing No. 162-4.) Infogroup's response to interrogatory No. 17 stated, in part:

> The only knowledge that Infogroup has about any of the contents of the flash drive comes from communications it had with its own attorneys. The persons within Infogroup participating in and/or listing to any communications between Infogroup and its retained attorneys and involving the flash drive were Michael Iaccarino, John Hofmann, Amit Khanna and Infogroup in-house attorney Kristen Knauf. The

substance of these communications are contained within the Declarations from Gregory C. Scaglione . . . , Laura De Santos . . . and Amit Khanna . . . which were filed in the underlying matter at Case No. 8:14-CV-0049, and the deposition of Gregory C. Scaglione taken in this matter.

(Filing No. 169-4.) Infogroup responded to interrogatory No. 18 as follows:

Infogroup states that, other than interacting with its attorneys, Infogroup has not taken any action with regard to any information that is contained on a flash drive provided by Blake Van Gilder to its attorneys. The interaction involving its attorneys relative to the flash drive is set forth within the Declarations from Gregory C. Scaglione . . . , Laura De Santos . . . and Amit Khanna . . . , which were filed in the underlying matter at Case No. 8:14-CV-0049, and the deposition of Gregory C. Scaglione taken in this matter.

(Filing No. 169-4.)

On June 16, 2020, before responding to Database's revised discovery requests, Infogroup served additional interrogatories on Database seeking information about the eleven entities Database identified as lost accounts. The interrogatories requested that, for each of the eleven entities, Database identify: (1) the date they became a customer of Database's or Database's affiliated entities; (2) the name of the entity affiliated with Database that had/has the actual business relationship with the entity; (3) the date upon which the business relationship ended with the entity; (4) all reasons known to Database why the business relationship ended with the entity; and (5) identify all contracts Database had with the entity. On July 31, 2020, Database responded to the interrogatories and indicated that four of the eleven entities were only prospective customers, not lost accounts. (Filing No. 173-5.)

On August 19, 2020, Infogroup deposed Khanna regarding the contents of the Scaglione Declaration and his conversation with Luebbert referenced in the Declaration. Khanna was unable to recall specific conversations with Luebbert in 2016. Khanna testified as follows:

**Q**. Mr. Khanna, if I use the words, say flash drive of information that Mr. Van Gilder had or didn't have, does that mean anything to you?

**A**. No.

**Q**. Okay. Do you recall a conversation with Ms. [Luebbert] about documents or information that came from Mr. Van Gilder?

6

> **A**. I don't recall.
>
> **Q**. Do you recall – well, do you have – this is a "yes" or "no" question do you have any recollection whatsoever as to the subject matter of your conversations with Ms. [Luebbert] in 2016, to the extent you had any?
>
> **A**. I don't.
>
> **Q**. Okay. Do you recall having any conversations with Ms. [Luebbert] in any regard in 2016?
>
> **A**. I don't.

(Filing No. 173-3.) However, Khanna testified that he assumed he communicated with attorneys at Koley Jessen in 2016:

> **Q.** Mr. Khanna, do you recall receiving -- do you recall any oral communications with Ms. Hoffman in 2016?
>
> **A.** I don't recall. I'm sure I did.
>
> **Q.** What makes -- why are you sure that you had oral communications with Ms. Hoffman in 2016?
>
> **A.** Because my declaration says in 2016 they were our legal counsel.
>
> **Q.** Okay. What section of your declaration are you referring to, which paragraph, please?
>
> **A.** I think number five says, "I alerted Infogroup's attorneys, including Koley Jessen."
>
> **Q.** Okay.
>
> **A.** So –
>
> **Q.** And is it your understanding that the – I'm sorry, I want to make sure I let you complete your answer.
>
> **A.** Yeah, no, I'm assuming that was correct at the time and I communicated with Koley Jessen. The assumption that is Liz was one of the two people I know at Koley Jessen.

(Filing No. 173-3.)

7

At times during the deposition when Khanna was questioned about conversations with Koley Jessen, Infogroup's counsel objected based on the phrasing of the question. For example:

> **Q.** Okay. Outside -- okay.· So it's -- outside of this specific communication referenced in paragraph five [of your Declaration], do you have any recollection of an oral communication that you had with Ms. Hoffman at any point in 2016?
>
> [[**Infogroup Counsel**] I'm going to object. You're asking for -- if you're just asking has he ever talked to his attorneys in the year 2016 for any related matter? I mean, that's how I'm interpreting this question. You can answer that "yes" or "no."
>
> **A.** I'm sure I did. I don't recall them, but they were our attorneys. I would have spoken to them.

(Filing No. 173-3.)

There were also several points during the deposition when Infogroup's counsel objected based on the attorney-client privilege and instructed Khanna not to answer:

> **Q**. So, Mr. Khanna, do you recall having any conversations with Ms. Hoffman regarding Infogroup customers in 2016?
>
> **A**. Not anything specific.
>
> **Q**. Okay. Did you – when you say "not anything specific", do you – did you have any conversations with Ms. Hoffman regarding DatabaseUSA customers in 2016?
>
> [**Infogroup counsel**]: I'm going to object to the question. It invades the attorney/client privilege. Do not answer that question . . . If you want to anchor this to some testimony from Mr. Scaglione in his deposition that was based on information in his declaration, or Mr. Khanna's deposition – or declaration, excuse me, then I think we can answer. Otherwise, these are too general for this witness to answer. Thank you.
>
> **Q.** Mr. Khanna, did you have any conversations with Ms. Hoffman regarding the entity Microsoft?
>
> [**Infogroup counsel**]: I'm going to object to the form of the question. It's overly broad and as you've posed it, it's irrelevant and immaterial to any issues of fact. It also is asking this witness to provide a response to communications that he's had with an attorney for Infogroup. And so, that --those communications are protected by the attorney/client privilege and I'm going to instruct this witness not to respond.
>
> **Q.** Same question, Mr. Khanna, did you have any conversations or communications with Ms. Hoffman regarding the entity TomTom in 2016?

[**Infogroup counsel**]: I'm going to object to this question on the same basis that it is not anchored to any specifics, and Mr. Scaglione's deposition, his declaration, or the declaration from Mr. Khanna. It's overly broad. It also requires a response that would invade the attorney/client privilege. So I'm going to instruct this witness not answer. Again, I would suggest that if you are able to pose a question that's tightened up to the conversation that Greg Scaglione discussed and testified to in his deposition, I think that would alleviate some of my objections. Thank you.

[**DatabaseUSA counsel**]: Noted. And for the record, I'm reading entity names that were explicitly testified to by Mr. Scaglione at page 73 of his deposition. But, that's fine.

(Filing No. 173-3.)

Database's counsel ultimately suspended and held open Khanna's deposition. (Filing No. 173-3.) Thereafter, Database's counsel contacted the Court advising that the parties had a discovery dispute. The Court granted Database leave to file motions to compel regarding the dispute. Database's instant motions to compel followed.

## DISCUSSION

### 1. Motion to Compel Discovery

Database seeks an order compelling Infogroup to provide information and documents responsive to its revised discovery requests. This request will be denied as the requests are overly broad and seek irrelevant and privileged information.

Revised interrogatories Nos. 12, 13, and 14, and revised document production request Nos. 43, 44, 45, and 49 seek information about the eleven entities Database identified as accounts lost between 2017-2019. Now, however, it appears that four of the eleven entities were only *prospective* Database clients during that time period. Moreover, discovery has revealed that five of the entities were Infogroup's customers before and after March 2, 2016. Additionally, six of the entities were Infogroup customers before March 2, 2016, but none of them were ongoing customers on March 2, 2016, and none have since resumed a relationship with Infogroup.

Discovery related to the six entities who no longer have a business relationship with Infogroup is clearly irrelevant. Database did not lose these entities' business based on information

on the flash drive, nor did Infogroup maintain these entities' business on account of information received from the flash drive. As to the other five entities, the only way this discovery is relevant is if the entities were discussed during the phone call between Khanna and Luebbert and then Infogroup used the information learned about the entities on the call to keep the entities' business. There is no indication that these entities were discussed on the phone or that Infogroup only maintained these accounts due to information received from the flash drive. Therefore, based on the information the Court has at this time, Infogroup's responses to these discovery requests were proper.[1]

Infogroup's responses to revised interrogatory Nos. 17 and 18 and document production requests 46 and 47 were likewise appropriate. Discovery in this case was limited to information regarding the flash drive, to include (1) the content of the flash drive; (2) what content from the flash drive was disclosed; (3) who the content was disclosed to; (4) and what those individuals did with the disclosed information. The waiver of privilege extended to the conversations between Koley Jessen and Infogroup identified in the Declaration. The waiver did not extend to all privileged communications and documents related to the flash drive. Interrogatory Nos. 17 and 18 asked Infogroup to identify *all* communications it had with Koley Jessen regarding documents or information on the flash drive and to describe Infogroup's actions after it received this information. The scope of these interrogatories is overly broad and the interrogatories intrude upon privileged communications. Document production request Nos. 46 and 47, which request information about pricing and sales strategies, are similarly overly broad and request irrelevant information as they are not connected to the information on the flash drive. Therefore, Infogroup's responses to these discovery requests are sufficient.[2]

---

[1] If future discovery indicates Infogroup used the information on the flash drive to keep one of these five entities' business, the Court may, upon request, reconsider the sufficiency of the discovery responses.

[2] Database asserts Infogroup has not identified its approach to email discovery or confirmed that it searched email for responsive email communications. Database further contends Infogroup has not produced anything to indicate it performed a document search or that potentially responsive documents have been preserved. The Court is confident that counsel is aware of their duty to preserve documents and the consequences of failing to do so as set out in Federal Rule of Civil Procedure 37. However, if Database is concerned Infogroup has not complied with its electronic document preservation obligations, it may serve an interrogatory regarding this issue.

Database also requests that the Court order Khanna to sit for another deposition. This request will also be denied. The Court agrees with defense counsel that the objections and instructions not to answer during the deposition were proper. The questions as posed were overly broad and intruded upon attorney-client information as they were beyond the limited waiver found by the Court. Infogroup's counsel's objections were clear and Database's counsel could have re-phrased his questions based upon Infogroup's counsel's detailed explanation of his objections. Infogroup's counsel reiterated that Khanna would answer properly phrased questions related to the conversation set out in the Declaration, but Database's counsel decided instead to suspend the deposition. Moreover, as acknowledged by Database, Khanna testified he does not recall having conversations with Luebbert regarding information received from Van Gilder. Therefore, there is really no reason to question Khanna further about the details of his conversation with Luebbert because Khanna testified he does not remember any. Accordingly, Database's Motion to Compel Discovery (Filing No. 159) is denied.

### 2. **Motion to Compel Deposition and Documents**

Database seeks an order compelling Luebbert to make herself available for a deposition. In order to depose opposing counsel, the party seeking the deposition must show (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). The Court finds this burden has been satisfied.

This lawsuit is based on allegations that Infogroup and Koley Jessen misappropriated information received from Van Gilder on the flash drive. Scaglione's Declaration references a conversation between Koley Jessen and Infogroup regarding the flash drive received from Van Gilder. During Scaglione's deposition, it was discovered that the conversation referred to in the Declaration was between Khanna and Luebbert. Therefore, testimony regarding the contents of the conversation between Khanna and Luebbert regarding the flash drive is relevant and crucial to the preparation of the case. Further, the Court previously found a limited waiver of privilege extending to matters contained in Scaglione's Declaration.

11

The Court previously advised the parties that Luebbert's deposition was a possibility depending upon what Khanna testified to during his deposition. Khanna testified that he does not recall having a conversation with Luebbert regarding information received from Van Gilder. Thus, other than deposing Luebbert, there is no other means to obtain information regarding the conversation referred to in Scaglione's Declaration. Although Scaglione was deposed regarding the contents of his Declaration, he testified he was not actually a part of the conversation referenced in the Declaration. Given Khanna's lack of recollection and Database's inability to obtain information regarding the conversation between Khanna and Luebbert from any other source, the Court will order Luebbert to appear for a deposition. However, questioning will be strictly limited to the details of Luebbert's telephone conversation with Khanna referenced in the Declaration.

Database also seeks the notes Luebbert took during her telephone conversation with Khanna. Koley Jessen objects to producing the notes, arguing that they are attorney-client privileged and protected work-product. The Court will conduct an *in camera* review of Luebbert's notes to determine if they are subject to production.

Accordingly,

**IT IS ORDERED:**

1. The Motion to Compel Discovery (Filing No. 159) is denied as set out above.

2. The Motion to Compel Deposition and Documents (Filing No. 163) is granted, in part. Luebbert shall provide deposition testimony with questioning limited to Luebbert's conversation with Amit Khanna referenced in the Declaration. Koley Jessen shall submit the notes of Luebbert's conversation with Khanna to the Court for *in camera* review by February 1, 2021.

Dated this 22nd day of January, 2021.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge